# District of Columbia
# Court of Appeals

No. 13-BG-1501

IN RE:  ANDRE P. BARBER,
                          Respondent.

Bar Registration No. 466138                              BDN: 7-06, et al.


BEFORE: Fisher and Beckwith, Associate Judges, and Nebeker, Senior Judge.

## O R D E R

On consideration of Bar Counsel's petition for rehearing by the division, respondent's motion to exceed the page limit, and respondent's lodged petition for rehearing by the division, it is

ORDERED that respondent's motion for leave to exceed the page limit is granted and the Clerk shall file the lodged petition for rehearing by the division.  It is

FURTHER ORDERED that respondent's petition for rehearing is denied.  It is

FURTHER ORDERED that Bar Counsel's petition for rehearing is granted and the opinion issued by this division on October 8, 2015, is hereby vacated and the division shall issue a new opinion forthwith.  *See* D.C. App. Internal Operating Procedure Part XI (I).


### PER CURIAM



Copies to:

Andre P. Barber
1005 Crestline Drive
Dothan, AL 36301

Theodore D. Frank, Esquire
Chair, Board on Professional Responsibility
430 E Street, NW, Suite 138
Washington, DC  20001

Wallace E. Shipp, Jr., Esquire
Bar Counsel, Office of Bar Counsel
515 5th Street, NW, Suite 117
Washington, DC  20001

emb

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-BG-1501

IN RE ANDRE P. BARBER, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 466138)

On Report and Recommendation of
the Board on Professional Responsibility
(BDN-7-06)

(Argued October 2, 2014                    Decided[*] November 12, 2015)

*Andre P. Barber*, pro se.

*Julia L. Porter*, Senior Assistant Bar Counsel, with whom *Wallace E. Shipp, Jr.*, Bar Counsel, and *Jennifer P. Lyman*, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before FISHER and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

PER CURIAM: Respondent Andre Barber opposes the Board on Professional

Responsibility's unanimous recommendation that he be disbarred from the practice

---

[*] This case was originally decided on October 8, 2015. The division has granted Bar Counsel's petition for rehearing and substituted the present opinion in place of the original opinion. This opinion reflects changes to the discussion regarding the need for a bill of particulars.

of law in the District of Columbia. Mr. Barber was found to have violated sixteen Rules of Professional Conduct. We are not persuaded by Mr. Barber's arguments on appeal, and we accept the Board's recommendation of disbarment.

This appeal involves three separate disciplinary matters that were consolidated after two Hearing Committees found several rule violations. In the first matter, Mr. Barber was accused of violating Rule of Professional Conduct 3.1 (asserting and pursuing frivolous claims) and Rule 8.4 (d) (seriously interfering with the administration of justice) for his actions in pro se litigation with his residential landlord. The Board found that Mr. Barber filed several "groundless and repetitive pleadings and appeals, which were intended to increase his opponent's fees, and had that effect." When those appeals reached our court, we called his claims "frivolous" and stated that "[w]e do not believe that appellant reasonably could have entertained the faintest hope of prevailing on the merits of this appeal" and that "the trial court characterized the argument he presents on appeal as 'crazy.'" Mr. Barber was subsequently sanctioned by the trial court, but he never paid the roughly $87,000 of legal fees incurred by his landlord.

In the second matter, Mr. Barber was accused of violating fourteen Rules of Professional Conduct—thirteen that were sustained by the Board—during his representation of three clients in litigation against their landlord, Tenacity Group,

LLC. Several charges arose from statements Mr. Barber made and actions he took while attempting to collect his legal fees from his clients and from Tenacity directly. These included misrepresentations to an arbitrator that the fee was not in fact contingent; statements breaching the settlement agreement, which resulted in his clients losing their valuable settlement; threats to report counsel for Tenacity to the bar if counsel did not pay him; and "[l]aunch[ing] a [l]itigation [b]arrage [a]gainst Tenacity" that one trial judge called "highly disturbing" and "baseless." In addition, Mr. Barber was found to have failed to communicate with a client regarding the client's appeal and to have used an improper trade name.

The third matter against Mr. Barber consisted of allegations of misconduct during Bar Counsel's investigation—primarily false statements. Mr. Barber was also cited for his "palpable disdain" and failure to adhere to Hearing Committee orders during the formal disciplinary proceedings.

## I.

Together, the two Hearing Committees found that Mr. Barber had committed all seventeen of the rule violations of which he had been accused, and

the Board adopted these findings except for the alleged violation of Rule 1.4 (b).

Mr. Barber now challenges these findings on myriad grounds.[1]

First, Mr. Barber challenges a number of his false statement violations as lacking substantial evidence. *See In re Robinson*, 74 A.3d 688, 694 (D.C. 2013) (Court of Appeals "must accept the factual findings of the Hearing Committee, unless they are not supported by substantial evidence in the record"). As to two charges, Mr. Barber's argument relies on his assertion that witnesses gave false testimony during the hearing. But "[t]his court is in no position to overturn [the Committee's] factual findings when . . . the Committee observed the witnesses, questioned them and assessed their truthfulness."[2] *In re Kanu*, 5 A.3d 1, 11 (D.C. 2010) (internal quotation marks omitted). As to other charges, Mr. Barber's arguments—even if true—are inconsequential.[3] We are satisfied that there is

---

[1] The Board noted that Mr. Barber's "litany of arguments [is] reminiscent of the frivolous claims and tactics that resulted in the charges against him."

[2] Nor do we have any occasion to consider Mr. Barber's allegation that Bar Counsel "is still knowingly making false arguments in its brief" on appeal. The two Hearing Committees found the facts as they did, and the Board affirmed them as being supported by substantial evidence. We cannot upset that determination by second-guessing the factfinder's credibility assessment.

[3] We do reject Bar Counsel's assertion that "[a]ll the factual findings that Respondent challenges are based on the Committees' credibility determinations." For example, Mr. Barber's attempt to prove that he "never stated that the Court of Appeals 'directed him to file a motion to correct errors'" by pointing to record evidence has no issues of credibility intertwined.

substantial evidence that Mr. Barber made several material misrepresentations in several different contexts and, even if he cannot be properly found to have made one or two particular false statements, there is substantial evidence that he violated each of the rules he has been accused of violating.

Mr. Barber claims that his Fifth Amendment right against self-incrimination was violated when the Hearing Committee called him as a witness. Unlike in a criminal trial, however, Mr. Barber did not have a Fifth Amendment right to decline to take the witness stand. He instead was free to invoke his Fifth Amendment right on a question-by-question basis if, in responding to a question, Mr. Barber would be providing evidence that could be used to convict him of a crime. *See Miss. State Bar v. Attorney-Respondent*, 367 So. 2d 179, 185 (Miss. 1979); *In re Baun*, 232 N.W.2d 621, 624-25 (Mich. 1975); *cf. Littlejohn v. United States*, 705 A.2d 1077, 1083 (D.C. 1997) (noting that the "absolute right not to testify" is limited to criminal defendants).[4]

---

[4] Mr. Barber also argues that the Board did not have authority to order him to be a witness, but Board Rule 11.2 permits the chair to "question the participant for the purpose of clarifying matters raised at the hearing." Mr. Barber's argument that the rule cannot be used to "transform an adversarial hearing into an inquisition" is meritless given that, as just discussed, he was always free to invoke his Fifth Amendment right in response to specific questions.

Nor can Mr. Barber fairly contend that Bar Counsel could not charge him with lying based on testimony he was "compelled" to make. The Constitution

(continued…)

Mr. Barber further argues that the Specification contains charges regarding the *Barber v. Potomac Place Assocs.* litigation beyond those alleged in the Informal Admonition he rejected, a violation of Board Rule 6.4.[5] This is because the proposed Informal Admonition focuses exclusively on Mr. Barber's frivolous appeal in this court in that case, while the Specification makes additional allegations of rule violations stemming from Mr. Barber's conduct in Superior Court in relation to that case. The Board concluded that these allegations were not additional "charges" because they did not assert violations of different rules, instead contending that "the Specification of Charges simply provided a more comprehensive and detailed description of the facts supporting those charges [and therefore] did not violate Board Rule 6.4." Even assuming that the Board erred by including what were really additional charges under the guise of a more complete factual description, any error would be harmless. The record contains substantial evidence that Mr. Barber violated both Rules 3.1 and 8.4 (d) during the *Potomac Place* appeal, as we noted that his appeal was "frivolous." That the Hearing Committee might have inappropriately considered additional conduct that also

---

(…continued)
gives Mr. Barber the right to refuse to answer questions that may incriminate him. *In re Artis*, 883 A.2d 85, 103 (D.C. 2005). It does not give him the right to lie. *United States v. Wong*, 431 U.S. 174, 178 (1977).

[5] Mr. Barber cites Board Rule 6.5, but presumably means Rule 6.4.

happened to violate Rules 3.1 and 8.4 (d) did not prejudice Mr. Barber. Unlike in a criminal case, Mr. Barber did not receive multiple "convictions" for multiple violations—the Board merely delineates which rules he violated and recommends a sanction accordingly. There is no question that Mr. Barber violated Rules 3.1 and 8.4 (d) in conduct that was properly before the Board.

Mr. Barber next argues that he received insufficient notice of the charges against him because the Specification was "nothing more than a 'shotgun pleading'" that did not adequately explain which factual assertions were used to justify which rule violations. Mr. Barber's claim, however, is not that a bill of particulars was erroneously denied[6]—it is that his constitutional right to due process was violated. We find no merit to this contention. Even assuming that the Specification was in some way deficient, Bar Counsel, in its opposition to Mr. Barber's motion to dismiss, identified the factual allegations in the Specification that supported the particular rule violations of which Mr. Barber claimed to be uncertain. Moreover, at the outset of the hearing, Bar Counsel briefly went through each charge and explained which facts in particular supported each

---

[6] We therefore need not decide what relief would be warranted from such a determination on appeal.

charge.[7]  The Constitution requires nothing more.  *See In re Winstead*, 69 A.3d 390, 397 (D.C. 2013) (holding that due process is satisfied when "the Specification of Charges gave respondent notice of the specific rules she allegedly violated, as well as notice of the conduct underlying the alleged violations").

Mr. Barber's allegation that Bar Counsel violated due process by "coaching an adverse witness" is likewise without merit.  Mr. Barber cannot show that any witness was improperly "coached."  We reject Mr. Barber's claim that it was improper to allow a witness to refresh his recollection of a conversation in which that witness participated.  *Cf. Hawthorne v. United States*, 504 A.2d 580, 586 n.15 (D.C. 1986) (recognizing that Fed. R. Evid. 612, which allows for refreshing recollection of a witness on the stand, "reflects long-standing District of Columbia practice").

Mr. Barber next argues that he did not have an "opportunity to respond" to the allegations against him as required by various rules—specifically, that he did not have the opportunity to respond in writing under Board Rule 2.8 and that he did not have the opportunity that Bar Rule XI § 6 (a)(2) affords him to respond to

---

[7]  This occurred in response to the panel chair's request that Bar Counsel "give us some preliminary guidance as to which of the events and situations that you expect to prove will support, at least in part, the various alleged rule violations in paragraph 168, so that we can be alert to that as we're hearing the evidence in your attempts to prove these charges."

the allegations. Mr. Barber had sufficient opportunity to respond to the allegations in person before two separate Hearing Committees, he did in fact respond in writing in an "Answer to the Specification of Charges" dated August 30, 2010, and we have already concluded that Mr. Barber's due process rights were not violated. Mr. Barber had all the opportunity to respond to which he was entitled.

We reject Mr. Barber's equal protection claim that he was unfairly targeted by Bar Counsel, who refused to initiate a formal investigation against counsel for Tenacity at Mr. Barber's behest. Even assuming that Bar Counsel needed a "rational basis" for its decision not to prosecute Mr. Barber's complaint against counsel for Tenacity, its conclusion that there was "'insufficient evidence' to warrant a formal investigation" against counsel for Tenacity sufficiently explains its actions.

We are also not convinced by Mr. Barber's argument that the Specification of Charges did not comply with the oath requirement of D.C. Code § 11-2503 (b) (2012 Repl.). Bar Counsel verified that "I do affirm that I verily believe the facts stated in the Specification of Charges to be true." As the Board correctly noted, "This is the *same* oath, by the *same* person, that the Court of Appeals specifically approved in *In re Morrell*, 684 A.2d 361, 365-67 (D.C. 1996)." Mr. Barber's attempt to distinguish *Morrell*, claiming we "merely ruled that Bar Counsel's oath

need not be based on personal knowledge," is unavailing. If the sworn statement need not be based on personal knowledge, we are not persuaded that the oath requires more "facts to support why Bar Counsel's belief should be deemed reliable," as Mr. Barber argues.

Mr. Barber argues that the Hearing Committee's failure to issue its report within 120 days violated his right to due process and was prejudicial. The 120-day rule is "directory, rather than mandatory," however. *Morrell*, 684 A.2d at 370. Mr. Barber's argument that the Hearing Committee erred by failing to entertain his motions to dismiss is also without merit because, as the Hearing Committee noted, a Hearing Committee is not authorized to rule on such a motion but must instead include a recommended disposition in its report to the Board. *In re Ontell*, 593 A.2d 1038, 1040 (D.C. 1991); Board Rule 7.16 (a).

Finally, Mr. Barber argues that the sanction of disbarment was "procedurally improper" and that Bar Counsel "may not argue for disbarment because it failed to file exceptions to the Hearing Committee reports and neither Hearing Committee recommended disbarment." This argument is contrary to our case law. In *In re Foster*, 699 A.2d 1110, 1112 (D.C. 1997), this Court adopted the Board's recommendation of disbarment when two Hearing Committees had each recommended lesser sanctions. Bar Counsel did not file any exceptions in that

case, either. *Id.* at 1110. The Board there noted that "[n]either of the committees was aware of the proceedings heard by the other committee. Presumably, the sanction recommendation would have been more severe had all of the matters been heard by a single committee." *Id.* at 1112. And the Board further explained that

> [u]nder [this] Court's ruling in *Matter of Thompson*, 492 A.2d 866, 867 (D.C. 1985), where two or more separately docketed matters are before the Board involving the same respondent, the question as to sanction should be: If all the matters were before the Board simultaneously, what would be its recommendation as to the appropriate discipline?

*Id.* The Board then recommended disbarment, and we accepted the recommendation. *Id.* at 1110.

This is the proper procedure for the Board to follow when determining sanctions in cases in which separate matters become consolidated. The Board's recommendation of disbarment is thus not procedurally barred, and, for the reasons set out in the Board's report, we hereby order Mr. Barber's disbarment from the practice of law in the District of Columbia. For the purposes of seeking reinstatement, the period of disbarment shall not be deemed to commence until Mr. Barber files an affidavit that conforms to the requirements of D.C. Bar R. XI, § 14 (g).

*So ordered.*